**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LANCE BRAUMAN, )<br>)<br>Defendant. )<br>_____) | **CRIMINAL ACTION**<br><br>No.  05-10234-01-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to dismiss count 3 of the Indictment. (Doc. 9). The motion has been fully briefed and is ripe for decision. (Docs. 9, 13, 14). The motion is denied, for the reasons herein.

**I.  ANALYSIS**

Defendant challenges the constitutionality of 18 U.S.C. § 666 both facially and as applied. The statute reads as follows:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists--
> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--
> (i) is valued at $5,000 or more, and
> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or
> (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or
> (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection

>     with any business, transaction, or series of transactions
>     of such organization, government, or agency involving
>     anything of value of $5,000 or more;
>
>     shall be fined under this title, imprisoned not more than
>     10 years, or both.
>
>     (b) The circumstance referred to in subsection (a) of this
>     section is that the organization, government, or agency
>     receives, in any one year period, benefits in excess of
>     $10,000 under a Federal program involving a grant,
>     contract, subsidy, loan, guarantee, insurance, or other
>     form of Federal assistance.

Defendant has been indicted under subsection (a)(1)(A). (Doc. 1). Defendant argues that the statute is facially unconstitutional since it does not require a nexus between the embezzled funds and the federal funds received by the agency. Defendant further asserts that the statute is unconstitutional as applied since Congress has exceeded its power under the Spending Clause by enacting criminal statutes. The government responds that the Supreme Court's recent opinion in <u>Sabri v. United States</u>, 541 U.S. 600 (2004), has foreclosed defendant's positions.

Defendant spends most of his brief citing a concurring opinion from the Eighth Circuit in <u>United States v. Morgan</u>, 230 F.3d 1067 (8th Cir. 2000). This court, however, is bound by decisions from the Tenth Circuit and the Supreme Court. The Tenth Circuit has not been faced with this exact question, but the Supreme Court did address these questions in <u>Sabri</u>. In <u>Sabri</u>, the court held that 18 U.S.C. 666(a)(2) was constitutional by disposing of both positions that defendant now attempts to assert before this court.

>     Sabri raises what he calls a facial challenge to §
>     666(a)(2): the law can never be applied constitutionally
>     because it fails to require proof of any connection between
>     a bribe or kickback and some federal money. It is fatal, as
>     he sees it, that the statute does not make the link an

-2-

element of the crime, to be charged in the indictment and demonstrated beyond a reasonable doubt. Thus, Sabri claims his attack meets the demanding standard set out in <u>United States v. Salerno</u>, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed.2d 697 (1987), since he says no prosecution can satisfy the Constitution under this statute, owing to its failure to require proof that its particular application falls within Congress's jurisdiction to legislate.

We can readily dispose of this position that, to qualify as a valid exercise of Article I power, the statute must require proof of connection with federal money as an element of the offense. We simply do not presume the unconstitutionality of federal criminal statutes lacking explicit provision of a jurisdictional hook, and there is no occasion even to consider the need for such a requirement where there is no reason to suspect that enforcement of a criminal statute would extend beyond a legitimate interest cognizable under Article I, § 8.

Congress has authority under the Spending Clause to appropriate federal monies to promote the general welfare, Art. I, § 8, cl. 1, and it has corresponding authority under the Necessary and Proper Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare, and not frittered away in graft or on projects undermined when funds are siphoned off or corrupt public officers are derelict about demanding value for dollars. Congress does not have to sit by and accept the risk of operations thwarted by local and state improbity. Section 666(a)(2) addresses the problem at the sources of bribes, by rational means, to safeguard the integrity of the state, local, and tribal recipients of federal dollars.

It is true, just as Sabri says, that not every bribe or kickback offered or paid to agents of governments covered by § 666(b) will be traceably skimmed from specific federal payments, or show up in the guise of a quid pro quo for some dereliction in spending a federal grant. But this possibility portends no enforcement beyond the scope of federal interest, for the reason that corruption does not have to be that limited to affect the federal interest. Money is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value. Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there. And officials are not any the less threatening to the objects behind federal spending just because they may accept general retainers. It is certainly enough that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest, such as that provided here, and on a bribe that goes well beyond liquor and cigars.

For those of us who accept help from legislative

-3-

history, it is worth noting that the legislative record confirms that § 666(a)(2) is an instance of necessary and proper legislation. The design was generally to "protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery," see S. Rep. No. 98-225, p. 370 (1983), in contrast to prior federal law affording only two limited opportunities to prosecute such threats to the federal interest: 18 U.S.C. § 641, the federal theft statute, and § 201, the federal bribery law. Those laws had proven inadequate to the task. The former went only to outright theft of unadulterated federal funds, and prior to this Court's opinion in Dixson v. United States, 465 U.S. 482, 104 S. Ct. 1172, 79 L. Ed.2d 458 (1984), which came after passage of § 666, the bribery statute had been interpreted by lower courts to bar prosecution of bribes directed at state and local officials.  Thus we said that § 666 "was designed to extend federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds," id., at 58, 118 S.Ct. 469, thereby filling the regulatory gaps. Congress's decision to enact § 666 only after other legislation had failed to protect federal interests is further indication that it was acting within the ambit of the Necessary and Proper Clause.
     Petitioner presses two more particular arguments against the constitutionality of § 666(a)(2), neither of which helps him. First, he says that § 666 is all of a piece with the legislation that a majority of this Court held to exceed Congress's authority under the Commerce Clause in United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed.2d 626 (1995), and United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed.2d 658 (2000). But these precedents do not control here. In Lopez and Morrison, the Court struck down federal statutes regulating gun possession near schools and gender-motivated violence, respectively, because it found the effects of those activities on interstate commerce insufficiently robust. The Court emphasized the noneconomic nature of the regulated conduct, commenting on the law at issue in Lopez, for example, "that by its terms [it] has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." 514 U.S., at 561, 115 S. Ct. 1624. The Court rejected the Government's contentions that the gun law was valid Commerce Clause legislation because guns near schools ultimately bore on social prosperity and productivity, reasoning that on that logic, Commerce Clause authority would effectively know no limit.  In order to uphold the legislation, the Court concluded, it would be necessary "to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." Lopez, 514 U.S., at 567, 115 S. Ct. 1624.

-4-

> No piling is needed here to show that Congress was within its prerogative to protect spending objects from the menace of local administrators on the take. The power to keep a watchful eye on expenditures and on the reliability of those who use public money is bound up with congressional authority to spend in the first place, and Sabri would be hard pressed to claim, in the words of the Lopez Court, that § 666(a)(2) "has nothing to do with" the congressional spending power. Id., at 561, 115 S. Ct. 1624.

541 U.S. at 604-608, 124 S. Ct. 1941, 1945-47 (internal citations omitted).

The court in Sabri was discussing the constitutionality of section (a)(2). This court, however, finds the reasoning and rationale for upholding section (a)(2) equally compelling in determining that the Supreme Court would also find section (a)(1) as constitutional. Section (a)(1) applies when an agent of the agency has embezzled funds from his agency that receives federal funds while section (a)(2) is directed at individuals who attempt to bribe officials of the agency receiving federal funds.

By upholding section (a)(2) as constitutional without requiring that a nexus exist between the bribed funds and the federal funds, the court stated that "[i]t is certainly enough that the statute condition the offense on a threshold amount of federal dollars defining the federal interest." Id. at 606. The court explained that a nexus requirement is not necessary since a defendant may reason that "money can be drained off here because a federal grant is pouring in there." Id. This reasoning is equally applicable to section (a)(1).

The court's holding that section (a)(2) is not an unconstitutional exercise of power is also easily extended to section (a)(1). The court explained that "[t]he power to keep a watchful eye on expenditures and on the reliability of those who use public money

-5-

is bound up with congressional authority to spend in the first place." Id. at 608.  Surely if Congress has the authority to punish those who bribe officials that are employed by an agency that receives federal funds, logic would compel the conclusion that Congress could also punish those agents who embezzle funds from those agencies.

Accordingly, defendant's motion to dismiss count 3 (Doc. 9) is denied.


IT IS SO ORDERED.

Dated this   15th   day of March 2006, at Wichita, Kansas.


                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE